[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Sandra D. Dawkins, and the defendant, were married on December 17, 1977 at Phoenix, Arizona. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children, issue of this marriage, Alexander Odili Ekeinde, born April 7, 1986 and Alan Odili Ekeinde, born November 29, 1989. The parties also have two other children who are currently in college. Neither party has received state assistance.
From the evidence presented, the court finds that the defendant's conduct is the sole reason for the cause of the breakdown of the marriage.
The plaintiff is presently unemployed. Based on all of the evidence presented, the court finds that the plaintiff's earning CT Page 14919 capacity should be used in determining financial orders and finds that earning capacity to be a gross annual income of $32,000 and a net weekly income for child support guideline purposes of $465.
This court previously found by Memorandum of Decision, coded 103.50 dated August 25, 1998, that the defendant had a gross weekly income from Odili Technologies, Inc. of $2403. The defendant did not physically appear during the two days of this trial. A financial affidavit was submitted on his behalf dated October 1, 1999 showing that he was self-employed by Odili. No credible evidence was presented as to whether that was intended to refer to Odili Technologies, Inc. or to another entity that he is involved in known as Odili West. He shows in his October 1, 1999 financial affidavit gross weekly income of $1634.62 and a net weekly income of $978.18. The court finds that no credible evidence has been presented that his income is any different from what it was on August 25, 1998. The defendant has failed to comply with the court order for the payment of appraisal fees to allow the plaintiff to engage the services of an appraiser for purposes of an evaluation. He also failed to appear at a duly scheduled deposition notice. He also failed to produce documents that would have been useful in doing an appraisal of Odili Technologies, Inc. The defendant was found in contempt of court on August 23, 1999 for failing to comply with a court order entered on July 6, 1999 for him to pay to the plaintiff the sum of $2500 towards the business appraisal fees to be paid within twenty days of July 6, 1999. The court ordered that in addition to the payment of the $2500 that the defendant was further to pay the sum of $275 in attorney's fees within ten days from August 23, 1999. The defendant failed to comply with that order. The August 23, 1999 order also provided that if the order was not complied with, that the defendant shall be precluded from offering any evidence of the value of his businesses. In November, 1998, the defendant moved to California. The equipment of Odili Technology, Inc. was moved from Connecticut to Stockton, California. Odili Technology, Inc. manufactured electronic parts and made computer cables. The defendant designed computer cables.
The defendant previously told the plaintiff that Odili Technologies, Inc. had a fair market value of $6 million in 1997, and that he had an offer to purchase the property for that sum. The court finds from that testimony that the fair market value of the property in 1997 was $6 million. The court further finds that as a result of the defendant's failure to comply with discovery orders and failure to appear at a deposition and failure to pay CT Page 14920 the $2500, that the defendant was ordered to pay for an appraisal, that the only remaining evidence as to the current fair market value of Odili Technologies, Inc. is $6 million, and the court finds that is its fair market value.
The defendant has stonewalled all attempts by the plaintiff to obtain his current financial circumstances.
The parties purchased a residence in both names in Connecticut for $355,000. There was a $43,000 down payment with the balance financed with a mortgage. The defendant vacated that residence on April 2, 1998. The plaintiff vacated the family residence on July 10, 1999. The two minor children were sent by the plaintiff to Arizona to reside with the plaintiff's parents and be enrolled in school for the school term commencing 1999. The plaintiff intends to move to Arizona very shortly. While the family residence was under foreclosure, it was sold with the closing on or about September 30, 1999. The parties also owned property in California that they purchased in 1991 for $195,000. That property went into foreclosure during the summer of 1999, and the bank took over the property. The property was in both names. There is a potential capital gains tax due to the IRS as a result of the California foreclosure.
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of §46b-81 (c) regarding the property orders, and has considered the provision of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provision of §46b-56 regarding the issue of custody and visitation, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is to pay to the plaintiff alimony in the sum of $550 per week. CT Page 14921
2. Alimony is to terminate upon the remarriage of the plaintiff or upon the death of either party.
3. The provision of § 46b-86 (a) and § 46b-86 (b) are applicable.
C. BY WAY OF CUSTODY AND VISITATION
1. Sole custody of the minor children is awarded to the plaintiff.
2. The defendant is awarded reasonable rights of visitation.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $345 weekly. In addition, he is to pay 56 percent of the unreimbursed and uncovered medical expenses and child care contribution.
2. The plaintiff is to pay the first $100 annually of all unreimbursed medical expenses commencing January 1, 2000 for each of the two minor children. For the remainder of the calendar year 1999, she is to pay the first $9 of the unreimbursed medical expenses for each child.
3. The defendant is to maintain medical insurance for the minor children.
4. The defendant has the right to claim both minor children as exemptions for federal and state-income tax purposes for each calendar year in which he is current in his support obligations at the end of such calendar year as well as being current in all of his alimony obligations at the end of each calendar year.
5. It is ordered that (1) the signature of the plaintiff shall constitute a valid authorization to the insurer for purposes of processing an insurance reimbursement payment to the provider of the medical services; (2) neither parent shall prevent or interfere with the timely processing of any insurance reimbursement claim; and (3) the defendant shall promptly pay to the plaintiff any insurance reimbursement for the services of a medical provider paid by the payer parent. For purposes of subdivision (1), the plaintiff is responsible for providing the insurer with a certified copy of the order of dissolution. Such CT Page 14922 insurer may thereafter rely on such order and is not responsible for inquiring as to the legal sufficiency of the order.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is awarded all items of household furnishings and jewelry in her possession.
2. The defendant previously conducted a business known as Odili Technologies. The defendant shall be entitled to any proceeds that remain as a result of the sale of the business and is responsible for all debts and liabilities, including all court costs and attorney's fees connected with that business, and all local, state and federal taxes. He is to hold the plaintiff harmless from all liabilities arising out of his business ventures. The asset shown on the defendant's financial affidavit as "Odili" is awarded to the defendant.
3. The plaintiff shall retain her employee benefit plan and IRA as shown on her financial affidavit whether qualified or non-qualified for federal tax purposes and whether said interest arises by contract pursuant to said plan or by the Retirement Equity Act of 1984 or otherwise.
4. The defendant shall pay any capital gains taxes associated with the foreclosure of the parties' jointly owned property in California. The defendant shall pay the Citibank VISA debt shown on the plaintiff's financial affidavit dated October 5, 1999 in the amount of $5000 and hold the plaintiff harmless and indemnified of such liability.
5. All joint debts of the parties to the IRS and State of Connecticut are to be paid by the defendant and he is to hold the plaintiff harmless.
6. All assets shown on the plaintiff's financial affidavit are awarded to the plaintiff except for Odili Technologies, Inc.
7. The defendant is to pay to the plaintiff as property settlement the sum of $1 million. It is to be paid at the rate of $50,000 per year commencing January 2, 2002; and $50,000 payable on the second day of each January annually thereafter for a total of twenty separate payments. In the event any installment is not paid when due, then interest shall accrue on the full unpaid balance at the rate of 6 percent per annum. This sum is not is CT Page 14923 not intended to be taxable income to the plaintiff or deductible by the defendant.
F. BY WAY OF ATTORNEY'S FEES
1. o attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed for so long as there is an outstanding support order or an outstanding support or an outstanding alimony order or for so long as there is any support or alimony arrearage.
2. All pendente lite orders remain in effect until the date this decision is filed and in the event there is any arrearage arising from such pendente lite orders, such arrearage is not merged into the judgment. As of the date of this trial the support arrearage was $1450.
Axelrod, J.